Todd M. Friedman, Esq. (SBN: 216752)
Suren N. Weerasuriya, Esq. (SBN: 278512)
Adrian R. Bacon, Esq. (SBN: 280332)
tfriedman@attorneysforconsumers.com
sweerasuriya@attorneysforconsumers.com
abacon@attorneysforconsumors.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NICASIO SANDOVAL,** | **Case No.:** 1:14-cv-01466-GEB-BAM |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | **Honorable Garland E. Burrell Jr.** |
| **KAISER FOUNDATION HEALTH PLAN, INC.,** | **Date:** February 02, 2015 |
| Defendant. | **Time:** 9:00 a.m. |
| | **Courtroom:** Ten |

- 1 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Memorandum of Points and Authorities**

## I. Introduction

The U.S. Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive nuisance calls found to be an invasion of privacy by Congress.[1] Plaintiff was one such consumer who Defendant subjected to unwanted and extremely intrusive telephone calls, using an automatic telephone dialing system ("ATDS") to numerously and repeatedly call Plaintiff to the point where Plaintiff felt harassed and retained counsel to secure the cessation of said conduct by Defendant. Yet, Defendant asks the Court to dispose of this case without allowing an adjudication on the merits, superficially arguing that Plaintiff's allegations regarding Defendant's placement of telephone calls are insufficiently pled to meet the liberal standards of Rule 8.

Defendant's attack on the FAC is a waste of the Court's resources and the respective parties' time, as the FAC alleges a sampling of the times and dates on which Defendant placed the harassing and intrusive calls giving rise to Plaintiff's claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227, et seq., and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), the former of which was enacted to curb intrusive methods of communication[2], and

---

[1] *Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (U.S. 2012); *Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1106 (D. Minn. 2009)
[2] TCPA, Pub.L. No. 102–243, § 11.

- 2 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

the latter of which[3] was enacted to curb and prevent abusive and harassing debt-collection practices. The FAC also alleges the telephone numbers from which Plaintiff received the alleged calls, as well as the purpose behind said calls, the equipment used by Defendant to place said calls, and Defendant's lack of consent to place such calls.

Consequently, it is unclear what more notice Defendant required, for determining the allegations against which it must defend. The Court should deny Defendant's Motion to Dismiss ("MTD") and Defendant's Motion For a More Definite Statement ("MTDS") with prejudice; to the extent that a granting of the MTD or MTDS is warranted, Plaintiff humbly requests leave of Court to cure any deficiencies the Honorable Court may find.

## II.   Facts

The FAC alleges that Defendant, a "debt collector," as defined by Section 1788.2(c) of the RFDCPA, began numerously contacting Plaintiff, a "debtor," as defined by the Section 1788.2(h) of the RFDCPA, regarding an alleged outstanding "consumer debt," as defined by Section 1788.2(f) of the RFDCPA, beginning in or around April of 2013.[4] The FAC alleges that Defendant "routinely called Plaintiff from telephone numbers (925)926-7627 and (562)401-5940," and that Defendant contacted Plaintiff *on at least* April 11, 2014, May 5,

---

[3] *Cal. Civ. Code* §1788.1
[4] FAC at ¶¶7-9.

- 3 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

2014, May 22, 2014, May 25, 2014, and June 8, 2014.[5] The FAC further alleges that the calls Defendant placed to Plaintiff were made using an ATDS, as defined by Section 227(a)(1) of TCPA, or an "artificial pre-recorded voice," in violation of Section 227(b)(1)(A) of the TCPA.[6] The FAC alleges that that ATDS used by Defendant has "the capacity to store or produce telephone numbers to be dialed, using a random or sequential number generator,"[7] that the number Defendant called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls[8] and that said calls were made without Plaintiff's prior express consent[9], for non-emergency purposes.[10]

Plaintiff's causes of action for Defendant's negligent and willful violations of the TCPA seek $500.00 in statutory damages and $1,500.00 in statutory damages, respectively, per illegal call.[11] Plaintiff's RFDCPA cause of action alleges that Defendant's conduct described in the FAC resulted in Defendant engaging in the following illegal conduct: 1) engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff (§1692d)); and 2) communicating, by telephone or in person, with the debtor with such frequency as

---

[5] *Id.* at ¶¶10-11.
[6] *Id.* at ¶12.
[7] *Id.*
[8] *Id.* at ¶13
[9] *Id.* at ¶15
[10] *Id.* at ¶14
[11] *Id.* at ¶¶17-24

- 4 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

to be unreasonable and to constitute an harassment to the debtor under the circumstances (Cal. Civ. Code §1788.11(e)).[12]

## III. Legal Argument

### A. Legal Standard

#### i. Standard On A Motion To Dismiss

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint."[13] The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs.[14] To survive a motion to dismiss, a plaintiff need only allege facts that are enough to raise his or her right to relief "above the speculative level."[15]

///

///

///

---

[12] *Id.* at ¶25-27. Note, the FAC alleges: "'Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001. *Cal. Civ. Code* §1788.17." Thus, to the extent that the above cited conduct is prohibited by 15 U.S.C. §1692, et seq. ("FDCPA"), they constitute violations of the RFDCPA, as set forth below."
[13] *Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1230 (S.D. Cal. 2009).
[14] *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).
[15] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (S. Ct. 2007).

- 5 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," and not simply conceivable.[16] The court looks not at whether the plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[17] A complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief.[18] On a Rule 12(b)(6) motion, the court does not "[r]equire heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.[19] In the Ninth Circuit, the Rule 12(b)(6) motion is viewed with disfavor and is rarely granted.[20]

"For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6)."[21] As a general rule, leave to amend a complaint, which has been dismissed, should be freely granted. Fed. R. Civ. P. 15(a). Because the FAC properly and adequately states a claim for relief for violations of the TCPA and RFDCPA, Defendant's MTD should be entirely denied, with prejudice.

///

///

---

[16] *Id.* at 1974; *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).
[17] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).
[18] *Puttner v. Debt Consultants of Am.,* 2009 U.S. Dist. LEXIS 48163 *8 (S.D. Cal. June 4, 2009).
[19] *Twombly,* 550 U.S. at 570.
[20] *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) (quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270,1274 (9th Cir. 1986)).
[21] *Brown v. Defender Sec. Co.,* 2012 WL 5308964 *2 (C.D. Cal. Oct. 22, 2012) (citing *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

### ii. Standard On A Motion For A More Definite Statement

Federal Rule of Civil Procedure 12(e) provides for a more definite statement only where a pleading "is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading."[22] Given the liberal pleading standards applicable under the federal rules (*see* Fed. R. Civ. P. 8), "Rule 12(e) motions are viewed with disfavor and are rarely granted."[23] Even when properly asserted, "[a] motion for more definite statement attacks intelligibility, not simply lack of detail."[24] Said Motion will be granted "only if the [challenged pleading] is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the [pleading] is so vague that the defendant cannot begin to frame a response."[25] Reciprocally, where a pleading "is specific enough to apprise the responding party of the substance of the claim or defense being asserted or where the detail sought is otherwise obtainable through discovery, a motion for more definite statement should be denied."[26]

### B. The FAC Pleads More Than Sufficient Facts To Give Defendant Fair Notice Of The TCPA Allegations Against Which It Must Defend

The TCPA prohibits "any person within the United States, (or any person outside the United States if the recipient is within the United States) from making

---

[22] Fed. R. Civ. P. 12(e).
[23] *Valasquez v. HSBC Finance Corp.*, 2009 WL 112929, at *1 (N.D. Cal. 2009).
[24] *Gregory Village Partners v. Chevron, USA*, 805 F. Supp. 2d 888 (2011).
[25] *Craigslist, Inc. v. Autoposterpro, Inc.*, 2009 WL 890896, at *4 (N.D. Cal. 2009).
[26] *Fernandez v. Centric*, 2013 WL 310373, at *2 (D. Nev. 2013).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

any call, other than calls made for emergency purposes or those made with prior express consent of the called party, to use any automatic telephone dialing system or artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or any service for which the called party is charged for the call."[27] The TCPA is a strict liability statute, where each call in violation of the statute is subject to a $500.00 penalty, regardless of reason.[28]

In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.[29] Furthermore, the Ninth Circuit has confirmed that "Congress intended to regulate the use of [ATDSs] to communicate or try to get into communication with a person by telephone."[30] "Accordingly, the prohibition in the TCPA applies to phone calls placed to cellular telephone numbers even if the intended recipient does not answer the calls. It is the mere act of placing the call that triggers the statute."[31]

Further, an "automatic telephone dialing system" is equipment which has the capacity: 1) to store *or* produce telephone numbers to be called, using a

---

[27] 47 U.S.C. § 227(b)(1)(A)(iii).
[28] 47 U.S.C. § 227(b)(3)(B).
[29] TCPA, Pub.L. No. 102–243, § 11.
[30] *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).
[31] *Filichio v. MRS Associates*, 2010 WL 4261442 *3 (S.D.FL., 2010) citing *Satterfield* at 954.

- 8 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

random or sequential number generator; and 2) to dial such numbers.[32] Also "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce numbers to be called, using a random or sequential number generator.'"[33]

Despite the FAC alleging that Defendant called Plaintiff without prior express, on his cellular telephone, using an ATDS, a system with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to call said numbers, Defendant alleges that Plaintiff's TCPA claim is insufficiently plead. Curiously, Defendant does not attack any of the primary elements required for pleading a prima facie case of the TCPA and focuses on the substance behind said calls, despite the FAC also alleging that said calls were for non-emergency purposes. Considering the above, it is unclear why Plaintiff was required to provide additional facts regarding the alleged debt Defendant was calling him about, especially to the overwhelming extent that the MTD rhetorically asks. Although not entirely clear, it appears Defendant is focusing on the element that requires that calls (alleged to be in violation of Section 227(b)(1)(A)) be placed for non-emergency purposes. Yet, Defendant offers no legal, factual or policy arguments contradicting Plaintiff's allegation,

---

[32] 47 U.S.C. §227(a)(1)
[33] *Satterfield* at 951.

- 9 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

which, if taken as true, sufficiently establishes (at the pleading stage) that the calls were not placed for emergency purposes;

Defendant also ignores that Plaintiff has provided at least some of the dates on which Defendant placed calls to Plaintiff, in addition to at least two numbers from which Defendant called Plaitniff. It is unclear what additional information Defendant needs, in order to assess Plaintiff's TCPA allegations. Answers to Defendant's rhetorical questions would not specifically provide additional insight into Plaintiff's TCPA claims, and to the extent that Defendant argues otherwise, said information can be obtained via discovery and is not required to be alleged at this stage, to meet Rule 8's liberal pleading requirements. Defendant has utterly wasted the Court's time by seemingly attacking one element of Plaintiff's TCPA claim that has been clearly, unmistakable and adequately pled. The Court should deny the MTD and MTDS entirely.

### C. The FAC Sufficient Pleads Defendant's Wrongful Conduct Under The RFDCPA

While Defendant cites case law holding that call harassment is premised on the nature, pattern, frequency and volume of the calls placed to a debtor/consumer, Defendant then contradicts said case law by arguing that five (5) calls do not constitute harassment. Defendant ignores that even per the case law it cited, the volume of calls alone does not determine if calls to a debtor/consumer were sufficient to constitute harassment. More importantly,

- 10 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant ignores that the FAC states, "Defendant contacted Plaintiff on *at least* (emphasis added) the following dates: April 11, 2014, May 5, 2014, May 22, 2014, May 25, 2014, and June 8, 2014."[34]

The dates alleged in FAC reference a sample of the calls placed by Plaintiff to Defendant, and not the entire universe of calls supporting Plaintiff's RFDCPA claim. Further, the FAC alleges that Defendant began *numerously* and *routinely* calling Plaintiff, beginning in April of 2013; this also confirms that Defendant's calls to Plaintiff were numerous and frequent.[35] Further, the FAC alleges that by numerously and routinely calling Plaintiff, in attempting to collect an alleged outstanding debt, Defendant: 1) engaged in conduct, the natural consequences of which resulted in harassment, oppression or abuse of Plaintiff; and 2) communicated with Plaintiff by telephone with such frequency as to be unreasonable and to constitute harassment to Plaintiff, under the circumstances.[36] Considering that the FAC alleges that Plaintiff was naturally harassed by Defendant's conduct and that the amount of calls placed to Plaintiff was unreasonable, *under the circumstances,* to Plaintiff, it is unclear what more needed to be alleged, to notify Defendant of the allegations against which it must defend.

---

[34] FAC at ¶11.
[35] *Id.* at ¶9.
[36] *Id.* at ¶27.

- 11 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant's reliance on *Conover v. BYL Collections Servs.,* who in turn relies on *Tucker v. CBE Group, Inc.*, is fruitless, as *Conover* merely cited to *Tucker*, and the facts from *Tucker* are distinguishable from the facts in this case. In *Tucker,* the plaintiff had an adult daughter, who had multiple several credit card accounts which had not been paid at the time the defendant, CBE Group, got involved.[37] The plaintiff's daughter lived with the plaintiff for about twelve (12) months during the two years preceding the filing of the *Tucker* complaint.[38] CEB commenced collection on one of the plaintiff's daughter's outstanding accounts, in 2009.[39] Because it was unable to locate a telephone number for the plaintiff's daughter, CBE began calling plaintiff in an effort to contact his daughter, after obtaining the plaintiff's number from a records search.[40] CBE placed numerous calls to the plaintiff's telephone number, leaving seven (7) voice-messages that identified his daughter and CBE's purpose in placing said calls.[41] Plaintiff Tucker testified knowing that the calls were for his daughter and not him, and also testified that he was not responsible for her debts; per the record in *Tucker*, it appeared that the plaintiff never spoke with anyone from CBE.[42] One of plaintiff

---

[37] *Tucker v. CBE Group, Inc.,* 710 F.Supp.2d 1301, 1303 (M.D. Fla. May 05, 2010).
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id,*

- 12 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Tucker's allegations was that CBE violated Section 1692d(5) of the FDCPA; the *Tucker* court opined as follows, with regards to this allegation:

> **Notably, Defendant never even spoke to Plaintiff; Defendant was not notified that it could not reach Stacey Tucker at the relevant telephone number and Plaintiff did not request that CBE cease calling… The evidence demonstrates that CBE placed each of its telephone calls with an intent to reach Stacey Tucker rather than an intent to harass Plaintiff.[43]**

Simply put, the *Tucker* Court found that *because* plaintiff Tucker was already aware that the calls by CBE sought his daughter, and because he never advised CBE that she cannot be reached at his number, the evidence does not show that CBE placed the calls to plaintiff Tucker with any intention other than reaching his daughter.[44] Naturally, where a person is alleging he or she felt harassed by calls to someone other than him or her, it would logically follow that the allegedly offending party be put on notice that it is calling the wrong number, before being held liable for calling the wrong person. Hence, the *Tucker* court factoring in the lack of a conversation between plaintiff *Tucker* and CBE does not strengthen Defendant's position in the present case. After all, Plaintiff is not claiming that Defendant wrongfully contacted her, seeking another consumer or debtor. She alleges that Defendant called *her*. It is unclear why a phone conversation is required before Defendant can be subjected to liability under

---

[43] *Id.*
[44] *Id.*

- 13 -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Section 1692d of the FDCPA or Section 1788.11(e) of the RFDCPA. Neither the FDCPA nor RFDCPA require *conversations* with consumers, per their strict language.

Defendant's reliance on *Krapf* is equally unhelpful for Defendant's position. In *Krapf,* the court did not cite *any authority* supporting its ruling that a failure to converse renders a claim under Section 1788.11(e) faulty; this is especially confusing considering that the *Krapf* Court still denied summary judgment on all of the plaintiff's other claims related to call frequency and harassment, including his claim under Section 1692d(5) of the FDCPA, not once factoring whether or not the parties conversed.[45] Thus, the Court should not follow *Krapf*, a clear outlier in the body of case law for the RFDCPA and FDCPA.

### D. The Purported Reasons For A More Definite Statement Do Not Warrant A More Definite Statement

Defendant claims that a more definite statement is required because the FAC is confusing. Clearly, there was a typographical error referring to Plaintiff as a female, in one allegation, but that does not render the entire FAC confusing. Nor does the statement regarding the policy behind the TCPA, wherein, the FAC states that, "The TCPA was designed to prevent calls and text messages like the ones described herein." Admittedly, the FAC does not allege text messages in

---

[45] *Krapf v. Nationwide Credit Inc.*, 2010 WL 2025323 *1-5 (C.D. Ca. May 21, 2010).

- 14 -
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

violation of the TCPA, so if this allegation has caused some confusion regarding text messages, an amendment allowing a removal of said remarks is warranted and should avoid any confusion. Further, Plaintiff's allegations regarding the TCPA certainly are not conclusory. Ironically, Defendant concludes as such without attacking any allegations regarding the TCPA, besides the non-emergency purpose element, which Plaintiff has more than adequately addressed herein. Thus, Defendant's MTDS should also be denied.

## IV.  Conclusion

For the reasons set forth herein, the Honorable Court should entirely deny Defendant's MTD and MTDS. To the extent the Court finds any deficiencies in the FAC, Plaintiff humbly requests leave to amend the FAC.

Dated: January 19, 2015

By: /s/ Suren N. Weerasuriya
Suren N. Weerasuriya
**Law Offices of Todd M. Friedman, P.C.**
Attorney or Plaintiff

- 15
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**